UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CHRISTINE BROWN,

    Plaintiff,

v.

MARGARET KOURETSOS AND CITY OF
CHICAGO SCHOOL DISTRICT #299,

    Defendants.

No. 15 C 11076

Judge Thomas M. Durkin

**MEMORANDUM OPINION AND ORDER**

Christine Brown, a former teacher at Florence Nightingale Elementary School in Chicago, alleges that Nightingale's principal, Margaret Kouretsos, harassed her in violation of state law and retaliated against her for taking medical leave in violation of the federal Family Medical Leave Act. *See* R. 23. Brown also alleges that the City of Chicago School District #299 (the "District")[1] is liable for Kouretsos's actions. Specifically, Brown makes the following claims against Defendants: intentional infliction of emotional distress (Count I); negligent infliction of emotional distress (Count II); and retaliation in violation of the federal Family Medical Leave Act (Count III). Defendants have moved to dismiss Counts I and II as untimely under 745 ILCS 10/8-101,[2] and for failure to state a claim

---

[1] The District states that it is incorrectly named in the caption, and should be listed as the "Board of Education of the City of Chicago."

[2] The Court notes that in both Defendants' motion and Plaintiff's response, this Act is incorrectly cited as 735 ILCS 10. The Illinois Local Government and

pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, Defendants' motion is granted in part and denied part.

**Legal Standard**

A Rule 12(b)(6) motion challenges the sufficiency of the complaint. *See, e.g., Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Mann v. Vogel*, 707 F.3d 872, 877 (7th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). In applying this standard, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *Mann*, 707 F.3d at 877.

---

Governmental Employees Tort Immunity Act is 745 ILCS 10. The Court assumes that this is the relevant statute based on the language quoted in Defendants' brief.

## Background

Brown worked as a teacher at Nightingale from the Fall of 2013 to June 12, 2014. R. 23 ¶ 6. Brown alleges that Kouretsos treated her "in an unusually hostile and abusive fashion" throughout that time. *Id.* ¶ 8. Kouretsos frequently threatened Brown with unwarranted discipline. *Id.* ¶ 35. Kouretsos told Brown repeatedly that Brown was unwelcome at Nightingale, and that she would make sure that Brown would not be coming back the next year. *Id*. Brown alleges that Kouretsos used an unreasonable and unjustifiable standard in her evaluations and observations of Brown in an attempt to intimidate and harass her, and that Kouretsos intentionally created a hostile and abusive work environment for Brown. *Id.* ¶ 36.

Brown alleges that on January 31, 2014, she attempted suicide "as a direct result of work related stress and the abusive treatment" of Kouretsos." *Id.* ¶ 9. Brown was hospitalized February 1-7, 2014 at Swedish Covenant Hospital. *Id.* Employees from Swedish Covenant Hospital sent faxes to Kouretsos on two occasions, February 8 and February 10, regarding Brown's hospitalization. *Id.* ¶¶ 10-11. After Brown returned to work, Kouretsos called Brown to her office on February 17, 2014 and commented that Brown's absences were costing a lot of money, due to having to pay for substitute teachers. *Id.* ¶ 13. Kouretsos said that she planned to write up Brown for her absences. But when Brown asserted that she was hospitalized and that the hospital had sent verification to the school, Kouretsos indicated that she would instead write up Brown for a previously excused absence from December 5, 2013. *Id.*

Kouretsos called Brown into her office again on February 18, 2014. Kouretsos "berat[ed]" Brown about completing certain testing. *Id.* ¶ 14. When Brown tried to respond, Kouretsos threatened to write her up for the absences from her hospitalization. *Id.* ¶ 15. Kouretsos then stated that, after this write up, she would only need to write up Brown one more time before she could fire her. *Id.* ¶ 16. Kouretsos advised Brown that she would not be allowed back after June, and that Brown should look for a new job. *Id.* Brown requested that her hospitalization absences remain in the past and that they move forward, but Kouretsos responded that she would not forget the past. *Id.*

On February 27, 2014, in an open office in which many individuals could overhear, Kouretsos accused Brown of smoking marijuana in the bathroom. *Id.* ¶¶ 18-20. Kouretsos showed Brown a letter requiring her to submit to a drug test or be fired, and pointed to the line stating that Brown would be fired. *Id.* ¶ 18. Brown submitted to a breath and a urine test, both of which came back negative. *Id.* ¶ 22. Brown learned from the nurse who administered the test, who was from an outside entity, that the school's request for someone to come to conduct a drug test came earlier in the afternoon. *Id.* ¶ 23. This meant that Kouretsos, despite suspecting that Brown had used marijuana, had allowed Brown to teach for over an hour until the nurse arrived. *Id.*

Around March 4, 2014, Kouretsos met with and gave Brown a negative evaluation of her observation of Brown's classroom on February 18, 2014. *Id.* ¶ 24. It was not the school's practice for Kouretsos to observe Brown's classroom, as

Brown teaches in a bilingual classroom and Kouretsos does not speak Spanish. *Id.* ¶ 25. The bilingual assistant principal, Ms. Sanchez, usually observed the bilingual classrooms. *Id.* At this same meeting, Kouretsos acknowledged that Brown's drug tests were negative, but said she could still write Brown up "for wearing 'inappropriate perfume.'" *Id.* ¶ 24.

On March 4, 2014, Brown received paperwork stating her absences related to the drug testing were unexcused and would be without pay. *Id.* ¶ 26. The papers that Kouretsos had previously shown Brown stated that the district would excuse and pay for the time off related to the negative drug tests. *Id.* Around March 26, 2014, Brown learned from another teacher at the school that the Defendants had previously "taken issue" with other employees that had required medical leave, and that Kouretsos was controlling on how and when employees could use sick days. *Id.* ¶ 28.

On May 28, Kouretsos called a meeting with Brown "about the things [Kouretsos] is going to write [Brown] up for." *Id.* ¶ 29. In response, Brown told Kouretsos that she had retained an attorney. Kouretsos laughed loudly and, referring to Brown making written records of her interactions with Kouretsos, offered to "help [Brown] spell any words that [Brown] can't." *Id.* Brown left the room and began speaking to an employee in adjacent room, but Kouretsos continued to mock Brown and stated that no one would believe Brown. *Id.* ¶¶ 29-30. Kouretsos then asked if Brown was looking for another job, because she was "not welcome back." *Id.* ¶ 31. When the meeting ended and Brown got up to leave, Kouretsos

slammed the door, nearly missing Brown. *Id.* ¶ 32. Brown alleges that she was severely startled by the sound and vibration of the door being slammed. *Id.*

Later that day, Kouretsos entered Brown's classroom and insinuated that Brown had stolen yarn used by her students. *Id.* ¶ 33. On May 30, 2014, Kouretsos again mocked Brown for retaining an attorney and repeated her insinuation that Brown had stolen yarn. *Id.* ¶ 34. Kouretsos's hostile and abusive behavior toward Brown continued until June 12, 2014. *Id.* ¶ 39.

Brown alleges that while she was employed at Nightingale, she required intensive psychiatric treatment for the stress and trauma caused by Kouretsos, and still continues to receive said treatment. *Id.* ¶ 37. Brown also alleges that she was unable to work as a full-time teacher after she left Nightingale due to Kouretsos's abuse. *Id.* ¶ 39.

## Analysis

### I. Timeliness

Defendants argue that the Brown's claims, which are allegedly based on incidents that occurred "until June 12, 2014," R. 23 ¶ 39, are time-barred by the one-year statute of limitations provided by the Local Government and Governmental Employees Tort Immunity Act, 745 ILCS 10/8-101. *See* R. 27 at 4. Under section 8-101, any action "against a local public entity or public employee" must be brought "within one year from the date that the injury was received or the cause of action accrued." The definition of "local public entity" includes school districts and school boards, and a "public employee" is an employee of the local

public entity. 745 ILCS 10/1-206, 207. Thus, since Nightingale is a public school and Kouretsos is employed as a principal of that school, the one-year statute of limitations provided by 745 ILCS 10/8-101 applies. *See Evans v. City of Chicago*, 434 F.3d 916, 934 (7th Cir. 2006) ("The limitations period for tort claims, such as intentional infliction of emotional distress, against governmental entities and their employees, however, is only one year pursuant to 745 ILCS 10/8-101."). Brown does not dispute that this is the applicable statute of limitations.

Brown filed her complaint on June 12, 2015. *See* R. 1 at 4. Defendants contend that all of Brown's allegations regarding Kouretsos's conduct occurred before June 12, 2014, and thus, Brown's claims are untimely. Brown argues that she alleges that Kouretsos's tortious conduct continued "until June 12, 2014," which is within the statute of limitations period. She also alleges that all of the specific incidents she recounts in her complaint that occurred before June 12, 2014 can still form the basis of timely claims because both intentional and negligent infliction of emotional distress claims are "continuing torts" for which the clock begins to run only when the "last injurious act occurs or the conduct is abated." *Feltmeier v. Feltmeier*, 798 N.E.2d 75, 88-89 (Ill. 2003) ("the continuing tort rule should be extended to apply in cases of intentional infliction of emotional distress"); *see also Renaud v. City of Chicago*, 2013 WL 2242304, at *5 (N.D. Ill. May 21, 2013) ("Under Illinois law, a cause of action for 'continuing torts'—such as [intentional infliction of emotional distress]—accrues at the time the last injurious act occurs or the conduct

7

is abated."). The Court agrees that the continuing tort doctrine is applicable to Brown's emotional distress claims.

Defendants do not dispute this contention, but rather, argue that even assuming that the continuing tort rule applies, Brown's claims are untimely because Brown has not alleged that any tortious conduct occurred on or after June 12, 2014. R. 32 at 2. Defendants find support for this argument in Brown's allegation that the hostile conduct "continued *until* June 12, 2014." *Id.* at 1-2. Defendants interpret Brown's use of "until" to be exclusive of June 12, 2014, and include only June 11, 2014 and before. *See id.* at 2. Defendants support their interpretation with the Chicago Public Schools Calendar, which lists June 11, 2014 as the last day of the 2013-2014 school year. R. 27 at 5. Thus, under Defendant's interpretation, the alleged conduct last occurred on June 11, 2014, which means that statute of limitations expired on June 11, 2014, one day before Brown filed her complaint.

This argument raises the question of whether the word "until," as used by Brown in her complaint, is a word of exclusion or a word of inclusion. Two cases from the nineteenth century indicate "until" is exclusive. *See Clark v. Ewing*, 87 Ill. 344, 345 (1877) ("the term 'to' that day must be construed to mean until the meeting of court upon that day," holding that a pleading had to take place before the mentioned date); *Webster v. French*, 12 Ill. 302, 304-05 (1850) (while stating that the word until may "have an exclusive or inclusive meaning," the court held that "until the first day of July" required bids to be in *before* the first day of July). In contrast,

as expressed by the Supreme Court of Kansas in 1978, "an examination of cases from other jurisdictions reflects a hopeless split of authority . . . on the meaning of the word 'until.'" *Barnes v. Gideon,* 578 P.2d 685, 689 (Kan. 1978). The court decided that "until" is "inclusive of the date mentioned and not exclusive *unless it is the clear intent of the parties to make it exclusive." Id.* at 689 (emphasis in the original). To complicate matters, Brown also used the equally ambiguous word "to" in describing the length of her employment in the complaint (Brown was employed "from Fall 2013 *to* June 12, 2014, R. 23 at 2) (emphasis added), so it is unclear whether she worked on June 12, 2014 or not. *See First Nat. Bank of La Grange v. Mid-States Eng'g & Sales, Inc.,* 431 N.E.2d 1052, 1053 (Ill. App. Ct. 1st Dist. 1982) ("Where the time for doing an act is extended 'to' a specified date, the doing of the act on the specified date is too late.").

However, "[d]ismissing a complaint as untimely at the pleading stage is an unusual step, since a complaint need not anticipate and overcome affirmative defenses, such as the statute of limitations." *Cancer Found., Inc. v. Cerberus Capital Mgmt., LP*, 559 F.3d 671, 674 (7th Cir. 2009). "Only when the plaintiff pleads itself out of court—that is, admits all the ingredients of an impenetrable defense—may a complaint that otherwise states a claim be dismissed under Rule 12(b)(6)." *Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004).

Considering the ambiguity in Brown's allegations, the Court cannot find that her claims are untimely. Even though Defendants have provided evidence that the last day of school was June 11, 2014, it is entirely plausible that Brown worked

9

through June 12, 2014. In fact, the calendar Defendants attached to their brief shows that June 13, 2014 was a "teacher institute day." *See* R. 27-1 at 15. Thus, Defendants' motion to dismiss Counts I and II as untimely is denied.

## II. Failure to State a Claim

### A. Count I: Intentional Infliction of Emotional Distress

Brown alleges that Kouretsos's actions amount to intentional infliction of emotional distress. Under Illinois law, for an intentional infliction of emotional distress claim to be successful the following elements must be proven: "(1) the defendants' conduct was extreme and outrageous; (2) the defendants knew that there was a high probability that their conduct would cause severe emotional distress; and (3) the conduct in fact caused severe emotional distress." *Swearnigen–El v. Cook Cnty. Sheriff's Dep't*, 602 F.3d 852, 864 (7th Cir. 2010) (citing *Kolegas v. Heftel Broad. Corp.*, 607 N.E.2d 201, 211 (Ill. 1992)).

Defendants argue that, even if all of the actions listed in Brown's complaint were accepted as true, the behavior does not rise to the level of "extreme and outrageous" necessary to state a claim. "To meet the 'extreme and outrageous' standard, the defendants' conduct 'must be so extreme as to go beyond all possible bounds of decency, and to be regarded as intolerable in a civilized community.'" *Swearnigen–El*, 602 F.3d at 864 (quoting *Kolegas*, 607 N.E.2d at 211). In determining whether conduct meets the "extreme and outrageous" standard, courts consider three main factors: (1) "the more power or control the defendant has over the plaintiff, the more likely the conduct will be deemed extreme"; (2) "whether the

defendant reasonably believed its objective was legitimate"; and (3) "whether the defendant was aware the plaintiff was 'peculiarly susceptible to emotional distress, by reason of some physical or mental peculiarity.'" *Franciski v. Univ. of Chi. Hosp.*, 338 F.3d 765, 769 (7th Cir. 2003) (quoting *McGrath v. Fahey*, 533 N.E.2d 806, 811 (Ill. 1998)). The Illinois Supreme Court has explained, "[c]onduct is of an extreme and outrageous character where 'recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" *Doe v. Calumet City*, 641 N.E.2d 498, 507 (Ill. 1994) (quoting Restatement (Second) of Torts § 46, cmt. D, at 73 (1965)).

Defendants argue that Brown's allegations merely amount to a "personality conflict" and "stress" associated with "performance evaluations," which do not rise of the level of "extreme and outrageous." R. 27 at 7. But even though allegations of garden variety disputes, or even discriminatory conduct, in the employment context do not always suffice to state a claim for intentional emotional distress, "courts have found extreme and outrageous behavior to exist . . . where the employer clearly abuses the power it holds over an employee in a manner far more severe than the typical disagreements or job-related stress caused by the average work environment." *Honaker v. Smith*, 256 F.3d 477, 491 (7th Cir. 2001). Although an employer can cause severe emotional distress to an employee without taking an action that can be "classified as 'extreme and outrageous,'" employer actions that "go well beyond the parameters of the typical workplace dispute" are sufficient to

11

state a claim for intentional infliction of emotional distress. *Lewis v. School Dist. #70,* 523 F.3d 730, 747 (7th Cir. 2008) (citing *Honaker*, 256 F.3d at 491).

Brown has alleged more than a garden variety employment dispute. Brown's allegation that Kouretsos falsely accused her of smoking marijuana on school property is "extreme and outrageous" considering the circumstances. The Court acknowledges that some courts have found similar false accusations, even in the employment context, to be insufficient to plausibly allege extreme and outrageous conduct. *See, e.g., McDowell v. J.B. Hunt Transp., Inc.,* 2004 WL 1878334, at *6 (N.D. Ill. Aug. 10, 2004); *Socorro v. IMI Data Search, Inc.,* 2003 WL 1964269, at *1 (N.D. Ill. Apr. 28, 2003). And the mere false accusation of marijuana use is not by itself actionable as extreme and outrageous conduct. It is defamation perhaps, but probably not intentional infliction of emotional distress. Context, however, is important. In a grammar school setting, a principal falsely accusing a teacher of smoking marijuana in a school restroom could be incendiary. The supposed marijuana use would necessarily have occurred within feet of classrooms filled with children. The accusation was made in front of other teachers. The uproar and public scorn Brown would have been subject to if the accusation was disseminated among parents could have been career-ending, even if it was eventually revealed to be false. Brown could have been branded with the scarlet letter of child endangerment. No rational parent would trust their child to the custody of a person accused of being a drug user. Not only did Kouretsos's statement imperil Brown's livelihood, it exposed her to social approbation of a high degree. This allegation, combined with

Brown's other allegations about Kouretsos conduct sufficiently alleges "extreme and outrageous" conduct.[3] Therefore, Defendants' motion to dismiss Count I is denied.

### B. Count II: Negligent Infliction of Emotional Distress

Brown also alleges that Defendants actions constitute negligent infliction of emotional distress. Under Illinois law, "for a direct victim to state a claim of negligent infliction of emotional distress, she must allege: (1) that defendant owed plaintiff a duty; (2) that defendant breached that duty; and (3) that plaintiff's injury was proximately caused by that breach." *Parks v. Kownacki*, 737 N.E.2d 287, 296-297 (Ill. 2000) (citing *Corgan v. Muehling,* 574 N.E.2d 602 (Ill. 1991)). "The determination of whether a duty exists—whether the defendant and the plaintiff stood in such a relationship to one another that the law imposed upon the defendant an obligation or reasonable conduct for the benefit of the plaintiff—is an issue of law to be determined by the court." *Brackett v. Galesburg Clinic Assoc.*, 689 N.E.2d 406, 409-410 (Ill. App. Ct. 3d Dist. 1997) (quoting *Corgan,* 574 N.E.2d at 606). "In determining whether to impose a duty upon a defendant, a court looks at various policy considerations, such as the likelihood of harm, the gravity of the injury, the burden of guarding against the injury, and the relationship between the parties." *Bracket* 689 N.E.2d at 410. If plaintiff has not alleged facts sufficient to impose a duty on defendant, plaintiff has failed to state a claim, and the action should be

---

[3] Defendants do not argue that Brown has failed to allege that she suffered severe emotional distress. Even if Defendants had made such an argument, the Court would likely find that Brown's allegations of attempted suicide and requiring psychiatric treatment are sufficient to demonstrate severe emotional distress.

13

dismissed. *Parks*, 737 N.E.2d at 296-297 (citing *Cunis v. Brennan,* 308 N.E.2d 617 (Ill. 1974)).

Here, Brown baldly alleges that "Defendants owed [Brown] a duty not to inflict emotional distress on Plaintiff" without further explanation of the basis for the duty. R. 23 at 10. As the Court understands Brown's claim, Brown is asserting that Kouretsos, as Brown's supervisor, had a duty not to negligently inflict emotional distress. Examination of Illinois law indicates that there is no such duty for employers to avoid negligently inflicting emotional distress upon their employees. *See Bogie v. PAWS Chi.*, 914 F. Supp. 2d 913, 918 (N.D. Ill. 2012) ("Similarly, Illinois courts have not imposed a general duty on employers to avoid causing harm to potential employees through their hiring and firing decisions, so there is no basis for a negligence claim."); *Sommers v. Household Int'l, Inc.*, 1999 WL 1285858, at *9 (N.D. Ill. Dec. 30, 1999) (stating that Illinois law does not recognize a duty to "refrain from doing anything that would cause an undue amount of psychological stress" within the employment context (citing *Brogan v. Mitchell Int'l, Inc.* 692 N.E.2d 276 (Ill. 1998)); and *Krieger v. Adler, Kaplan and Begu*, 1996 WL 6540, at *14 (N.D. Ill. Jan. 5 1996) (distinguishing the employment relationship from the psychologist-patient relationship that was found to be exploitative in *Corgan v. Muehling*, 574 N.E.2d 602 (Ill. 1991), and "declin[ing] to impose a duty that would greatly expand employer liability under Illinois law"). Absent such a duty there can be no claim for negligent infliction of emotional distress. Since

14

Brown has failed to allege that Kouretsos had such a duty, Brown's negligent infliction of emotional distress claim against Kouretsos must be dismissed.

On the other hand, a different analysis applies to Brown's negligent infliction of emotional distress claim against the District. Some courts have held that an employer has a duty to ensure that its employees are not subjected to intentional infliction of emotional distress by other employees. *See Curran v. JP Morgan Chase, N.A.*, 633 F. Supp. 2d 639, 641 (N.D. Ill. 2009) (an employer has a "duty to prevent intentional infliction of emotional distress by its employees"); *Jimenez v. Thompson*, 264 F. Supp. 2d 693, 696 (N.D. Ill., May 23, 2003) ("[The defendant] can be liable for negligent infliction of emotional distress if it negligently failed to prevent the intentional infliction of emotional distress by the foreman."); *Arnold v. Janssen Pharm., Inc.*, 215 F. Supp. 2d 951, 956 (N.D. Ill. 2002) ("[E]mployers sometimes have a duty to protect their employees from an 'imminent danger of serious harm.' [The plaintiff's] theory is that supervisors and employees had inflicted severe emotional distress on her and were likely to continue doing so."). This authority is a basis to find that Brown has sufficiently alleged that the District had a duty to ensure that Kouretsos did not intentionally subject her to severe emotional distress. Because the Court has found that Brown's intentional infliction of emotional distress claim against Kouretsos is plausible, Brown's negligent infliction of emotional distress claim against the District also is plausible.

## Conclusion

For the foregoing reasons, Defendants' motion to dismiss, R. 27, is denied in part and granted in part. The motion is denied with respect to Count I as to both of the defendants, granted with respect to Count II as to Kouretsos, and denied with respect to Count II as to the District. Brown's Count II claim against Kouretsos is dismissed without prejudice. Should Brown believe she can cure the deficiencies described by the Court with respect to that claim, Brown should file a motion for leave to amend her complaint, including a proposed amended complaint, and supported by a brief detailing how the proposed amendments cure the deficiencies, by July 18, 2016. If Brown files such a motion, the Court will order briefing on that motion should the Court deem it necessary.

ENTERED:

_____
Honorable Thomas M. Durkin
United States District Judge

Dated: June 15, 2016